**O**

# United States District Court
# Central District of California

CORE FOCUS CONSULTING 2, LLC,

Plaintiff,

v.

RENEWAGE ENERGY SOLUTIONS, INC.,

Defendant.

Case No. 2:24-cv-01809-ODW (RAOx)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD CAUSE OF ACTION [21]**

## I. INTRODUCTION

Plaintiff Core Focus Consulting 2, LLC ("CFC2") brings this action against Defendant RenewAge Energy Solutions, Inc. ("RenewAge"), alleging breach of contract, unjust enrichment, civil theft pursuant to California Penal Code section 496 ("Section 496"), and conversion. (Compl., ECF No. 2.) Under Federal Rules of Civil Procedure ("Rules" or "Rule") 12(b)(6) and 9(b), RenewAge now moves to dismiss CFC2's third cause of action for civil theft. (Mot. Dismiss ("Mot." or "Motion"), ECF No. 21.) For the reasons below, the Court **GRANTS** Defendant's motion **WITH**

**LEAVE TO AMEND.**[1]

## II. BACKGROUND[2]

CFC2 is an energy consulting company that offers project management services. (Compl. ¶ 10.) In 2017, Union Bank retained CFC2's services to install specialized lighting at various Union Bank locations (the "Union Bank Lighting Project"). (*Id.* ¶ 17.) Following a renegotiation of the project agreement in 2021, CFC2 enlisted the services of Redaptive—a company specializing in financing energy efficiency projects—to provide funding for the project. (*Id.* ¶¶ 16–18.) As the Union Bank Lighting Project's project manager, CFC2 managed the relationship between Union Bank and Redaptive. (*Id.* ¶ 18.)

RenewAge is an electrical contractor that installs various types of electrical equipment and systems. (*Id.* ¶ 12.) In 2021, Jim Nork, the President and Chairman of CFC2, entered into a Memorandum of Understanding ("MOU") with Envision Impact Ventures ("EIV"), the parent company of RenewAge. (*Id.* ¶ 15.). Under the terms of the MOU, CFC2 would use its "specialized business and client relationships [and] investment contracts" to "[c]ontribute to the overall growth of [EIV]." (*Id.* (alterations in original).) Among CFC2's "specialized" relationships and contracts were those with Union Bank and Redaptive through the Union Bank Lighting Project. (*Id.* ¶ 16.)

In or sometime after 2021, CFC2 selected RenewAge to perform the hardware installation and maintenance for the Union Bank Lighting Project. (*Id.* ¶ 20.) As part of the selection process, CFC2 and RenewAge "engaged in discussions . . . about potential avenues for cooperation" and subsequently made a "verbal agreement" to jointly bill Redaptive on behalf of both RenewAge and CFC2 for the work performed on the Union Bank Lighting Project. (*Id.* ¶¶ 22–23.)

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] The following facts are taken from CFC2's Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that well-pleaded factual allegations are accepted as true for purposes of a motion to dismiss).

The Union Bank Lighting Project was separated into eight Project Groups. (*Id.* ¶ 24.) Each Project Group consisted of multiple Union Bank locations and an accompanying "Project Addendum" outlining the allocation of duties, the specifics of implementing the Lighting Project at a given project site, and the breakdown of payment for the parties' respective services. (*Id.*) The parties established a procedure whereby RenewAge would invoice Redaptive for all funds pertaining to the relevant Project Group, CFC2 would invoice RenewAge for its portion of the funds earned for its work on the Project Group, and then, once RenewAge received payment from Redaptive, RenewAge would settle CFC2's invoice. (*Id.* ¶ 26.) Upon the conclusion of a Project Group, Union Bank was to "sign off" on its satisfactory completion. (*Id.*)

For the first five Project Groups, RenewAge submitted joint invoices to Redaptive, Redaptive paid the invoices, and RenewAge passed through to CFC2 its portion of the funds earned in accordance with their procedure. (*Id.* ¶¶ 24–27.) Then again, for Project Groups 6, 7, and 8, RenewAge and CFC2 completed the projects to Union Bank's satisfaction, RenewAge jointly invoiced Redaptive $999,945.95 for the work performed, and Redaptive paid RenewAge's invoice. (*Id.* ¶¶ 34–35.) On April 28, 2023, CFC2 invoiced RenewAge for $234,280.51 for CFC2's work on Project Groups 6–8. (*Id.* ¶¶ 5, 34.) However, unlike with the first five Project Groups, RenewAge did not pay CFC2's invoices for Project Groups 6–8. (*Id.* ¶ 36.)

CFC2 has since made several demands to RenewAge for payment of the invoices, initially with several emails and later with demand letters sent by CFC2's counsel. (*Id.* ¶¶ 5, 36–37.) All of CFC2's communications have gone unanswered. (*Id.* ¶¶ 5, 37.) CFC2 contends that RenewAge has withheld the portion of funds paid by Redaptive that were allegedly intended for CFC2's share of the work completed. (*Id.* ¶¶ 28–37.)

On March 6, 2024, CFC2 filed this suit, alleging four causes of action arising out of RenewAge's nonpayment of CFC2's invoice for Project Groups 6–8: (1) breach of contract, (2) unjust enrichment, (3) civil theft pursuant to Section 496, and (4) conversion. (*Id.* ¶¶ 38–71.) RenewAge now moves to dismiss CFC2's third cause

of action for civil theft for failure to state a claim upon which relief can be granted under Rule 12(b)(6) and for failure to satisfy the heightened pleading standard for fraud under Rule 9(b). (*See generally* Mot.)

## III. LEGAL STANDARD

### A. Rule 12(b)(6) Generally

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B. Pleading Fraud Under Rule 9(b)

Claims sounding in fraud must also comply with the heightened pleading requirements of Rule 9(b). *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). "A pleading satisfies Rule 9(b) if it identifies 'the who, what, when, where, and how' of the misconduct charged." *MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The plaintiff must "set forth more than the neutral facts necessary to identify the transaction [but rather] what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106.

## IV. DISCUSSION

RenewAge moves to dismiss CFC2's third cause of action for civil theft, arguing that CFC2 has not met the heightened pleading standard required by Rule 9(b). Although the Ninth Circuit has not expressly held that Rule 9(b) applies to civil theft claims under Section 496, sister courts within this district routinely apply Rule 9(b) to similar claims under Section 496. *See, e.g.*, *B.K. v. Desert Care Network*, No. 2:23-cv-5021-SPG (PDx), 2024 WL 1343305, at *10 (C.D. Cal. Feb. 1, 2024); *Grouse River Outfitters Ltd v. NetSuite, Inc.*, No. 16-CV-02954-LB, 2016 WL 5930273, at *14 (N.D. Cal. Oct. 12, 2016) (dismissing a Section 496 claim because, among other reasons, the plaintiff "did not identify false representations or plead fraud with particularity" to satisfy Rule 9(b)). The Ninth Circuit has held that when a claim is "grounded in fraud," or "sound[s] in fraud," it must meet the particularity requirement of Rule 9(b). *See Vess*, 317 F.3d at 1103–04. In the present case, neither party disputes that CFC2's Section 496 civil theft claim "sounds in fraud," thereby subjecting it to the heightened pleading requirement of Rule 9(b).

Section 496 allows any person to bring a civil claim against another who "buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained," or

"conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained." Cal. Penal Code § 496(a), (c). To plead a violation under Section 496(a), a plaintiff must establish: "(1) that the particular property was stolen, (2) that the accused received, concealed or withheld it from the owner thereof, and (3) that the accused knew that the property was stolen." *Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 213 (2015). California Penal Code section 484 ("Section 484") enumerates the specific acts that constitute theft for the purposes of Section 496(a).

In its Motion, RenewAge argues that CFC2 does not plead its Section 496 claim with the requisite particularity to satisfy Rule 9(b)'s heightened pleading standard. For the following reasons, the Court finds CFC2's civil theft claim does not meet Rule 9(b)'s heightened pleading standard because CFC2 failed to plead with particularity (1) a false representation constituting civil theft or (2) Section 496's scienter requirement. The Court addresses each in turn.

**A. False Representation**

First, the Court considers whether CFC2 sufficiently pleads that RenewAge obtained CFC2's property through some false representation, pretense, or trick that constituted civil theft. The parties disagree as to whether CFC2's Section 496 claim relies on a theory of "theft by false pretenses" or "larceny by trick and device." (*See* Mot. 9–11; Opp'n 3–6, ECF No. 24.) However, whether CFC2's civil theft claim is characterized as false pretenses or larceny by trick has no material impact on the resolution of RenewAge's Motion.

The theories of theft by false pretenses and larceny by trick or device are substantially similar in the context of a Section 496 claim. *See People v. Traster*, 111 Cal. App. 4th 1377, 1387–88 (2003); *see also* Cal. Penal Code § 484 (outlining the elements of both theories). The only distinguishing factor between the two theories is whether the fraud results in the acquisition of "title" or "possession" of the property. *Traster*, 111 Cal. App. 4th at 1387–88. (finding that theft by false pretenses involves

acquiring both "title and possession," while larceny by trick and device involves merely "obtain[ing] possession of property for a specific or special purpose"). Both theories involve the defrauding of another, whether by "trick and device" or "false pretense," and are therefore "grounded in fraud" and subject to the particularity requirement of Rule 9(b). *See Vess*, 317 F.3d at 1103–04.

To substantiate its Section 496 claim, CFC2 relies on RenewAge's alleged "false representation" to fraudulently obtain CFC2's property. (Compl. ¶¶ 21–22; Opp'n 7.) Accordingly, CFC2 must "state the time, place, and specific content of the false representations" and "the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). The complaint must set forth "what is false or misleading about [the] statement, and why it is false." *Vess*, 317 F.3d at 1106 (requiring more than "neutral facts necessary to identify the transaction").

Here, CFC2 alleges that in or sometime after "renegotiating the finance agreement" to engage Redaptive's services in 2021, the parties "engaged in discussions . . . about potential avenues for cooperation and coordination." (Compl. ¶¶ 17, 21.) As a result of these discussions, CFC2 alleges the parties "entered into a verbal agreement" that "RenewAge would bill Redaptive for the services provided by both companies [on the Union Bank Lighting Project] and, upon receipt of payment from Redaptive, RenewAge would pass through" CFC2's portion of the payment. (*Id.* ¶¶ 22–23.) CFC2 contends that RenewAge then used this agreement to "fraudulently appropriate[] CFC2's property" by submitting invoices to Redaptive including work performed by both parties "under the *false pretense* that RenewAge would pay to CFC2 the portion of the funds CFC2 had earned." (*Id.* ¶ 62 (emphasis added).) CFC2 asserts that "both CFC2 and Redaptive trusted that RenewAge would abide [by] its agreement . . . because the agreement had been operating as intended for the first 5 Project Groups." (Opp'n 8.)

CFC2 fails to plead with sufficient particularity the time, place, and specific content of these purported false representations. For example, CFC2's allegations that

the parties "engaged in discussions" sometime after "renegotiating the finance agreement" in 2021 is entirely devoid of temporal meaning. It is unclear when or how often these discussions occurred, what was discussed besides "potential avenues for cooperation," who within the two companies was involved in these discussions, or when the subsequent "verbal agreement" was made. *See, e.g.*, *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *14 (N.D. Cal. Nov. 11, 2016) (finding "allegations of 'repeated' conversations over an eight-month time frame" insufficient to plead the alleged misrepresentations with particularity). Furthermore, CFC2 does not articulate how RenewAge's nonperformance of the "verbal agreement" for RenewAge to "pass through" CFC2's portions of the funds after jointly billing Redaptive constitutes a false representation or amounts to anything more than a breach of contract. Lastly, while CFC2 adequately identifies the invoices in question, it does not clarify how submitting invoices to Redaptive including work performed by both parties constitutes a "false representation" without proof that the invoices were submitted with fraudulent intent.

Thus, because CFC2 fails to identify the factual content of the purportedly false representation and falls short of pleading such allegations with particularity, CFC2's Section 496 claim does not satisfy Rule 9(b)'s heightened pleading standard.

**B. Scienter**

Next, the Court examines whether CFC2 sufficiently alleges the third element of its Section 496 claim—that RenewAge knew the funds were stolen (*i.e.*, the "Scienter" requirement)—with the particularity mandated by Rule 9(b). CFC2 contends that RenewAge collected on the joint invoice for Project Groups 6, 7, and 8 "with *full knowledge* that it would then withhold these funds from CFC2." (Compl. ¶ 63 (emphasis added).) CFC2 attempts to demonstrate RenewAge's knowledge of the stolen funds with three separate allegations: (1) RenewAge "knew the funds it received . . . did not belong to it" because it completed payment on Project Groups 1–5, (2) RenewAge "knew it was not entitled to keep the funds" because CFC2 sent

"multiple emails demanding payment of its invoices" under Project Groups 6–8, and (3) RenewAge knew its conduct constituted theft because of the "demand letter [sent to RenewAge by CFC2's counsel] warning that if it did not release the funds to CFC2, CFC2 would file a lawsuit for civil theft." (Compl. ¶ 65–66.)

Contrary to CFC2's assertion, fraud allegations elicit a more demanding standard under Rule 9(b) to satisfy the scienter element of a Section 496 claim than simply pointing to the defendant's prior conduct and failure to perform on a promise as evidence of fraudulent intent. Certainly, "[a] promise made without intention to perform can be actionable fraud." *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001). However, to satisfy Rule 9(b)'s heightened pleading standard, a plaintiff must allege facts "which show that defendant harbored an intention not to be bound by terms of the contract at formation" and from which the court "can infer that the allegedly fraudulent statements were actually false when made." *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002); *Richardson v. Reliance Nat. Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *5 (N.D. Cal. Mar. 9, 2000); *see also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549, 1549 n.9 (9th Cir. 1994) (finding a plaintiff may prove the defendant's statement was "untrue or misleading *when made*" by "pointing to inconsistent contemporaneous statements or information . . . which was made by or available to the defendant[]" or "later statements made by the defendant along the lines of 'I knew it all along'"). Put plainly, "fraudulent intent cannot be proven . . . by simply pointing to the defendant's subsequent failure to perform as promised." *Smith*, 160 F. Supp. 2d at 1152 (citing *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30–31 (1985) (holding that if a plaintiff "adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, [they] will never reach a jury")).

Here, CFC2 fails to present any facts, statements, or conversations that demonstrate that RenewAge did not intend to perform at the time the agreement was made or had knowledge that the funds were stolen. CFC2 references a "verbal

agreement" that the parties would jointly invoice Redaptive for their work on the Union Bank Lighting Project and that RenewAge completed payment on Project Groups 1–5. (Compl. ¶¶ 22–23.) However, CFC2 does not explain how this agreement and prior performance translates to "full knowledge" RenewAge would withhold the funds from Projects 6–8 from CFC2. (*Id.* ¶¶ 21–22, 63).

Furthermore, RenewAge's failure to respond to CFC2's "multiple emails demanding payment of its invoices" and the "demand letter" sent by CFC2's counsel does not prove that RenewAge knew it acted with scienter at the time of the alleged conduct (nor does it demonstrate RenewAge's "guilty conscience"). (*Id.* ¶ 66.) CFC2 offers no factual basis demonstrating an intent to forego performance at the time the agreement was made, other than allegations relating to RenewAge's post-agreement conduct and failure to perform as promised. As such, CFC2 fails to plead the scienter element of a Section 496 claim with the particularity required by Rule 9(b) in the absence of any facts demonstrating RenewAge knew it was stealing CFC2's funds.

Therefore, CFC2's Section 496 civil theft claim also fails because it did not sufficiently allege a false representation or the scienter requirement with the particularity required by Rule 9(b)'s heightened pleading standard.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** RenewAge's Motion to Dismiss CFC2's third cause of action **WITH LEAVE TO AMEND**. (ECF No. 10.) If CFC2 chooses to amend, the First Amended Complaint is due no later than **twenty-one days** from the date of this Order, in which case RenewAge shall answer or otherwise respond within **fourteen days** of the filing. If CFC2 does not timely amend, the

dismissal shall be deemed a dismissal with prejudice as of the lapse of the deadline to amend.

**IT IS SO ORDERED.**

July 10, 2024

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**